GRYPHON NETWORKS
CORP., Plaintiff,

v.

CONTACT CENTER COMPLIANCE
CORP., Michael Kovatch and
David Keim, Defendants.

Civil Action No. 10–10258–MBB.

United States District Court,
D. Massachusetts.

June 13, 2011.

Thomas J. Clark, Mintz, Levin, Cohn, Ferris, Glovsky, Frank N. Gaeta, David Glod, Rich May, a Professional Corp., Robert R. Gilman, Gilman Clark LLC, Boston, MA, for Plaintiff.

William Green, Delfino Green & Green, Patrick W. Jordan, Jordan Law Group, San Rafael, CA, Thomas E. Kenney, Pierce & Mandell, PC, Mark C. O'Connor, Rich, May, Bilodeau & Flaherty, Boston, MA, Thomas Tate Andersen, Tate & Carr, P.C., Duluth, GA, for Defendants.

## MEMORANDUM AND ORDER RE: DEFENDANT CONTACT CENTER COMPLIANCE CORP.'S MOTION TO SEVER AND STAY LITIGATION OF PATENT CLAIM PENDING THE PTO'S REEXAMINATION OF U.S. PATENT NO. 6,130,937 (DOCKET ENTRY # 88)

MARIANNE B. BOWLER, United States Magistrate Judge.

Pending before this court is the above styled motion filed by defendant Contact Center Compliance Corporation ("CCCC") to sever and stay a patent infringement claim pending a reexamination of United States Patent No. 6,130,937 ("the '937 patent") by the United States Patent and Trademark Office ("PTO"). (Docket Entry # 88). Plaintiff Gryphon Networks Corporation ("Gryphon") opposes a stay because a delay in resolving the claim will unduly prejudice Gryphon by inter alia allowing CCCC, a direct competitor, to keep its competing product on the market. Gryphon also submits that a stay of the claim will not simplify the case because it impacts only two claims, the patent infringement claim (Count One) in the 15 count amended complaint (Docket Entry # 71) and a counterclaim for a declaratory judgment that the '937 patent is invalid

(Docket Entry # 82). Gryphon additionally maintains that because the reexamination at issue was ex parte, it is less likely to simplify the issues because CCCC is not bound by the PTO's prior art determination. Furthermore, allowing the case to proceed on two different tracks will result in repeating the same discovery, according to Gryphon.

## BACKGROUND

Gryphon filed this action on February 16, 2010, against defendant David Keim ("Keim"), a former Gryphon employee employed as the company's Global Account Executive from September 2008 to October 2009. (Docket Entry # 71, ¶ 18; Docket Entry # 81, ¶ 18). At the outset of his employment, Keim purportedly signed a confidentiality and noncompeting agreement ("the agreement") with Gryphon. In his position, Keim had access to confidential and competitively sensitive information.

In November 2009, Keim began performing services for CCCC as the company's Director of Sales, according to Gryphon. (Docket Entry # 71, ¶ 35). In violation of the agreement, Keim allegedly electronically mailed CCCC a list of 435 Gryphon customers including their contact information and the services they received ("customer spreadsheet"). (Docket Entry # 71, ¶ 36). Keim and defendant Michael Kovatch ("Kovatch"), Chief Executive Officer of CCCC, assigned the Gryphon customer contacts to Keim and another CCCC employee and, upon information and belief, Keim contacted Gryphon customers listed in the customer spreadsheet. CCCC thus hired Keim and proceeded to take advantage of confidential Gryphon customer information that Keim misappropriated, according to Gryphon. Other than the patent claim, the majority of the claims in the 15 count amended complaint revolve around Keim's violations of the agreement, the misappropriation of trade secrets and confidential information, conversion, interference with advantageous business relations, unfair competition, unfair and deceptive trade practices and computer fraud.

Gryphon is in the business of contact governance systems and allegedly develops and sells systems that allow Gryphon customers to comply "with state, federal and international Do–Not–Call restrictions." (Docket Entry # 71, ¶ 9; Docket Entry # 82, ¶ 9). The '937 patent involves a system and a process that inhibit or permit telephone calls to destinations based on do not call lists and allow for automatic updating of the do not call database by the user by sending an update signal. The patent specifically discloses a control device that selectively inhibits communication between a communication device and a destination over a network. As elucidated in Gryphon's claim construction brief and at a Markman hearing, the patent claim (Count One) focuses on allegations that CCCC's competing SmartBlock system infringes independent claims one and nine and dependent claims two and three of the '937 patent. (Docket Entry # 68).

On May 4, 2010, shortly after Gryphon filed suit, CCCC filed an ex parte request for reexamination with the PTO. On July 27, 2010, the PTO allowed the request for reexamination. On April 21, 2011, the PTO issued an initial Office Action that rejected claims one through four, six, seven and nine of the '937 patent under 35 U.S.C. § 102(e) as anticipated by United States Patent No. 5,960,071 issued to Smith ("the Smith Patent").[1] (Docket En-

---

1. The examiner also rejected claim five as      obvious under 35 U.S.C. § 103(a) and found

try #89, Ex. A). Shortly thereafter on May 23, 2011, CCCC filed the motion to sever and stay. Gryphon's response to the initial Office Action is due by June 21, 2011, according to Gryphon. The PTO has not issued a final rejection.

The average time between a reexamination filing date and issuance of a certificate is 25.7 months. PTO statistics also reflect that 63% of ex parte reexaminations requested by third parties result in changes to claims. (Docket Entry #89, Ex. B).

In the case at bar, the parties filed a motion to enter a stipulated preliminary injunction. On June 25, 2010, the court allowed the motion and signed the stipulated preliminary injunction. Subject to certain exceptions, the injunction enjoins CCCC from making communications or sales to any individual or entity identified on the customer spreadsheet for a 15 month time period. (Docket Entry #31).

Discovery is ongoing but more time consuming than originally anticipated. (Docket Entry #65). Thus far, the parties have engaged in written discovery consisting of interrogatories and document production. In March 2011, Gryphon produced 2,955 pages of documents as part of a rolling production. The parties are in the process of scheduling depositions. On April 11, 2011, this court conducted a Markman hearing. There is no trial date.

### DISCUSSION

■■■ "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–1427 (Fed.Cir.1988) (citation omitted); *accord Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849

(Fed.Cir.2008). In deciding whether to enter a stay pending reexamination by the PTO, courts oftentimes consider the following factors: " '(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set.' " *Nokia Corp. v. Apple Inc.*, 2011 WL 2160904, *1 (D.Del. June 1, 2011); *accord Cynosure, Inc. v. Cooltouch Inc.*, 2009 WL 2462565, *2 (D.Mass. Aug. 10, 2009) (citing same factors albeit referring to third factor as "the stage of litigation"); *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749, 754 (E.D.Tex.2006) (citing same factors).

■■■ Turning to the first factor, it is true that CCCC's status as a direct competitor of Gryphon's poses a risk of eroding Gryphon's market share by CCCC selling the SmartBlock product in the market during the stay. *See Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851, *3 (D.Del. Sept. 8, 2010) (noting reluctance of courts "to stay proceedings where the parties are direct competitors"); *Heraeus Electro–Nite Co., LLC v. Vesuvius USA Corp.*, 2010 WL 181375, *1 (E.D.Pa. Jan. 11, 2010) ("courts have been reluctant to grant stays where, as here, the parties are direct competitors" given the "concern that the patent owner will be irreparably harmed because the accused product will continue to gain market share during the pendency of the stay"). The preliminary injunction, however, prevents CCCC from contacting individuals and entities on the customer spreadsheet thus reducing the erosion of market share caused by the alleged infringement of CCCC's accused

claim eight patentable.

product.[2] *See generally K.G. Motors, Inc. v. Specialized Bicycle Components, Inc.,* 2009 WL 2179129, *4 (W.D.N.Y. July 22, 2009) (alleged infringer's cessation of its manufacture of accused product favored entering stay). Moreover, Gryphon may seek to vacate the stay in the event CCCC does not agree to extend the stipulated preliminary injunction after the 15 month period expires. That said, the preliminary injunction does not eliminate the risk inasmuch as CCCC may continue to contact "Excepted Entities." (Docket Entry # 31).

Gryphon's assertion that reexamination will take far longer than two years is misplaced. CCCC acted relatively promptly in seeking reexamination shortly after Gryphon filed this action. The average pendency between the time of filing (May 4, 2010) and the issuance of a certificate is 25.7 months (June 25, 2012). The latter date is only 12 months from now. In the event the initial Office Action rejecting claims one, three and nine becomes a final rejection, Gryphon can appeal to the Board of Patent Appeals and Interferences ("BPAI"). By statute, reexamination proceedings and appeals to the BPAI are "conducted with special dispatch." 35 U.S.C. § 305. Finally, given the progress to date of the reexamination proceeding as well as the preliminary injunction preventing CCCC from contacting individuals and entities on the customer spreadsheet in order to sell the accused product (or otherwise), a stay does not present a clear tactical disadvantage to Gryphon.

■ As to the second factor, a stay will simplify the issues in this case. The reex-amination proceeding involves the same patent claims at issue in this action. CCCC raises an affirmative defense that the '937 patent is unenforceable because of prior art. The initial Office Action indicates the presence of a viable and substantial issue regarding patentability. As the foregoing statistics demonstrate, ex parte reexamination proceedings oftentimes result in changes to the claims. Allowing the reexamination to conclude before addressing the patent claim (Count One) will give this court the benefit of the PTO's expert analysis of the prior art. *See Softview Computer Products Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y.2000) (noting advantage of stay because "prior art presented to the Court will have been first considered by the PTO, with its particular expertise"); *see also Pacific Bioscience Laboratories v. Nutra Luxe MD, LLC,* 2011 WL 65947, *3 (W.D.Wash. Jan. 10, 2011) (discussing benefits with respect to ex parte reexamination). Thus, even though, as pointed out by Gryphon, the reexamination proceeding will not address infringement or invalidity based on the on sale bar[3] and is potentially more limiting in effect than an *inter partes* reexamination, the proceeding will give this court the benefit of the PTO's expertise in construing prior art. Reexamination may also result in amended or changed claims such that proceeding to a construction of the claims presently before this court may be futile. *See Microlinc, LLC v. Intel Corp.,* 2010 WL 3766655, *2 (E.D.Tex. Sept. 20, 2010) (if any of the 25 "new claims or amended claims survive

**2.** Upon motion, this court can address CCCC's alleged violations.

**3.** Reexamination proceedings address prior art by allowing a patentee or any other person to "(1) cite to the PTO patents or printed publications as prior art pertaining to the validity of claims in a patent, and (2) request that the PTO reexamine any claim of that patent on the basis of the cited prior art." 4 Donald S. Chisum *Chisum on Patents* § 11.07[4] (2005) (citing 35 U.S.C. §§ 301–307).

reexamination, then the court's effort in construing the old claims may be futile").

■ Gryphon's additional argument that a stay will result in repeating discovery in two different phases of litigation overlooks the ability to use the same depositions after the stay is lifted and to reconvene a deposition to address issues related solely to the patent claim. Moreover, the scope and subject of the patent claim is distinct from and does not entirely overlap the scope and subject of the remaining claims. *See generally Card Technology Corp. v. DataCard Corp.*, 2007 WL 551615, *1 (D.Minn. Feb. 21, 2007) (noting distinctions between patent claim and counterclaim for tortious interference with prospective business advantage).

■ The stage of this litigation favors a stay. Although the parties have engaged in substantial written discovery, they are only beginning the process of conducting depositions. The parties completed claim construction briefing and this court held a Markman hearing. This court, however, has not constructed the claims and issued a Markman ruling. Fact discovery is not complete and expert discovery has yet to begin. The parties have not filed summary judgment motions. Notably, there is no trial date.

In sum, on balance the factors weigh in favor of issuing a stay.[4] Gryphon may move to lift the stay in the event CCCC does not agree to continue the stipulated preliminary injunction beyond the 15 month period. Gryphon may also seek to lift the stay in the event reexamination proves more time consuming than anticipated or other circumstances warrant revisiting the issue.

---

4. In addition and assuming arguendo that the standard outlined in *Saint–Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F.Supp.2d 252, 253 (D.Mass. 2006) ("[t]o be entitled to a stay, a party must

*CONCLUSION*

In accordance with the foregoing discussion, the motion to stay (Docket Entry # 88) is **ALLOWED** to the extent that the patent claim is stayed pending completion of the reexamination proceeding before the PTO. Discovery will otherwise proceed on the remaining claims. This court will conduct a status conference on June 28, 2011, at 2:30 p.m. to address scheduling.

demonstrate a clear case of hardship if there is a danger that the stay will damage the other party") applies, there is not sufficient evidence of a danger that the stay of the patent claim will damage Gryphon.